[No. 8164–8–III.   Division Three.   June 16, 1988.]

SHERI LYNN CRAWFORD, ET AL, *Appellants,* v. RONALD H.
WOJNAS, *Respondent.*

*Daniel F. Sullivan, Phillip Offenbacker, Thomas Golden,* and *Sullivan & Golden,* for appellants.

*John Rosendahl, Mary Spillane,* and *Williams, Lanza, Kastner & Gibbs,* for respondent.

THOMPSON, A.C.J.—Sheri and Russell Crawford appeal a judgment entered in favor of Dr. Ronald H. Wojnas in this action for medical malpractice. They argue the trial court improperly admitted evidence, failed to grant a directed verdict in their favor, and failed to grant their motion for a mistrial. We decline to reach these issues and dismiss the action as not cognizable under Washington law.

Dr. Wojnas administered live oral polio vaccine (OPV) to Melissa, the Crawfords' infant daughter. The vaccine mutated in Melissa's body, and the virulent virus spread to her mother, who was paralyzed by the disease.

Before administering the vaccine, Dr. Wojnas informed Sheri Crawford of a slight risk of polio infection either to the patient or to others who would come into close contact with the patient. However, Dr. Wojnas did not inform Mrs. Crawford of the existence of killed, inactivated polio vaccine (IPV). Experts testified IPV, while seldom used in the United States, is a risk–free alternative.

The Crawfords sued Dr. Wojnas, alleging, among other things, medical negligence and lack of informed consent. During argument on a pretrial motion, counsel for the Crawfords indicated he was abandoning their negligence claim, and would proceed solely on the issue of informed consent.

The jury returned a verdict for Dr. Wojnas. The Crawfords appealed, arguing they were entitled to a directed verdict, and arguing the court improperly admitted evidence of an informed consent "standard of care". After oral argument, the parties were asked to submit supplemental argument on the issue whether a nonpatient has a cause of action for breach of informed consent obligations to a patient.

A doctor's liability for failure to obtain informed consent is based on patient sovereignty.

> The doctrine of informed consent refers to the requirement that a physician, before obtaining the consent of his or her patient to treatment, inform the patient of the treatment's attendant risks. The doctrine is premised

on the fundamental principle that "[e]very human being of adult years and sound mind has a right to determine what shall be done with his own body". *Schloendorff v. Society of N.Y. Hosp.*, 211 N.Y. 125, 129, 105 N.E. 92 (1914) (Cardozo, J.), *overruled on other grounds, Bing v. Thunig*, 2 N.Y.2d 656, 667, 143 N.E.2d 3, 163 N.Y.S.2d 3 (1957). A necessary corollary to this principle is that the individual be given sufficient information to make an *intelligent* decision. *See Canterbury v. Spence*, 464 F.2d 772, 783 (D.C. Cir.) [*cert. denied*, 409 U.S. 1064 (1972)]. *Smith v. Shannon*, 100 Wn.2d 26, 29–30, 666 P.2d 351 (1983). *See* Shultz, *From Informed Consent to Patient Choice: A New Protected Interest*, 95 Yale L.J. 219 (1985).

To hold a doctor liable for failure to obtain informed consent, a plaintiff must show:

(a) That the health care provider failed to inform the patient of a material fact or facts relating to the treatment;

(b) That the patient consented to the treatment without being aware of or fully informed of such material fact or facts;

(c) That a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts;

(d) That the treatment in question proximately caused injury to the patient.

RCW 7.70.050(1)(a)–(d).

The doctor's liability is founded, not on violation of a standard of care among the medical community, but on failure to disclose material information to a patient. *Smith*, at 30; *Miller v. Kennedy*, 11 Wn. App. 272, 285–86, 522 P.2d 852 (1974), *aff'd per curiam*, 85 Wn.2d 151, 530 P.2d 334 (1975).[1] A doctor's duty to disclose material information, then, is directed at allowing the patient to make an intelligent medical decision. *Smith*, at 29. Because the duty is patient oriented, the doctor should not be liable for failure to disclose risks and alternatives to *third parties*.

---

[1]The Supreme Court unanimously and unequivocally approved the Court of Appeals decision. *See Smith*, at 30.

This distinction is clear when the analysis focuses, as in this case, on disclosure of an alternative treatment, rather than on risk of treatment. Disclosure of alternatives is necessary to permit the patient to make an informed choice. In this light, disclosure to third parties is unnecessary, because it is the patient herself, not the third party, who must choose the treatment.

The Crawfords direct our attention to several cases in which a health practitioner was found to have a duty to disclose risks to nonpatients. *See McIntosh v. Milano,* 168 N.J. Super. 466, 403 A.2d 500 (1979); *Hofmann v. Blackmon,* 241 So. 2d 752 (Fla. Dist. Ct. App. 1970); *Derrick v. Ontario Comm'ty Hosp.,* 47 Cal. App. 3d 145, 120 Cal. Rptr. 566 (1975). In these cases, however, the duty to disclose risks ran directly to the third parties, as foreseeable plaintiffs, rather than to the patient under the doctrine of informed consent. *See Petersen v. State,* 100 Wn.2d 421, 671 P.2d 230 (1983).

██ This analysis is complicated by the fact that here the third party plaintiff is the same person to whom disclosure was required as representative of the minor child. However, when Mrs. Crawford brought Melissa to Dr. Wojnas, she was not a patient herself, but was the mother and thus legal representative of her daughter. RCW 7.70-.065(1)(e). Dr. Wojnas' duty to disclose material risks and alternative forms of treatment ran not to Mrs. Crawford directly, but to Melissa, through her mother. The treatment caused no injury to Melissa, the patient to whom the doctor's duty ran. RCW 7.70.050(1)(d). Without injury to the patient, there can be no liability for failure to obtain informed consent.

The Crawfords argue, however, that Mrs. Crawford was a "de facto patient". They contend first that when the patient is an infant, the duty to disclose prenatal risks and alternatives runs to the child's parents. *Young v. Group Health Coop.,* 85 Wn.2d 332, 534 P.2d 1349 (1975); *Holt v. Nelson,* 11 Wn. App. 230, 523 P.2d 211 (1974). However, in these cases the parents were acting as the representatives of

the child, in whose interest the medical choices were to be made.[2] The duty to disclose was to benefit the children, not the parents.

Second, the Crawfords contend one reason Dr. Wojnas preferred the oral vaccine was its capacity to "spread" to other persons. They argue Dr. Wojnas intended Mrs. Crawford to be exposed to the virus, and thus the mother was a patient in fact. This argument logically may be extended to include *any person* with whom the infant came into contact. As we have observed, the purpose of the doctrine of informed consent is to promote informed medical choices, and there is no reason to extend the disclosure duty beyond those persons who have a legal voice in those decisions.

Mrs. Crawford was not a patient, and thus was not a person whose interests are protected by the doctrine of informed consent. The issue should not have been presented to the jury.

■ The Crawfords argue, however, that this court may not address this issue because it is bound by the "law of the case".

> The term has in the past been variously used in at least three situations. It has been used to indicate the binding effect of determinations made by the appellate court on further proceedings in the trial court on remand. E. g., Bunn v. Bates (1950) 36 Wash.2d 100, 216 P.2d 741. It has been used in connection with the rule that the instructions given to the jury by the trial court, if not objected to, shall be treated as the properly–applicable law. E. g., Peters v. Dulien Steel Products, Inc. (1952) 39 Wash.2d 889, 239 P.2d 1055. And it has been used to express the principle that an appellate court will generally not make a redetermination of the rules of law which it has announced in a prior determination in the same case or which were necessarily implicit in such prior determination. E. g., Columbia Steel Co. v. State (1949) 34 Wash.2d 700, 209 P.2d 482 [*cert. denied,* 339 U.S. 903 (1950)].

---

[2]There, the mothers also were patients, but apparently suffered no injuries. The doctor's duty to disclose in both cases clearly ran to the *parents* (as the children's representatives), rather than just to the mothers (as patients).

2A L. Orland, Wash. Prac., *Rules Practice* § 2131, at 501 (1978). All three situations require adherence to a court's prior determination. Here, no court has considered the issue of third party informed consent and there is no prior determination. The "law of the case" rule is inapplicable.

RAP 2.5(a) states the general rule that an appellate court may refuse to review any claim that was not raised in the trial court. *State v. Davis*, 41 Wn.2d 535, 250 P.2d 548 (1952). However, the court may address the following errors for the first time on appeal: "(1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right." RAP 2.5(a). Appellate courts in some cases have considered sua sponte matters that were not raised before the trial court and were not addressed by the parties in their appeal briefs. *State v. Danforth*, 97 Wn.2d 255, 643 P.2d 882 (1982); *Siegler v. Kuhlman*, 81 Wn.2d 448, 502 P.2d 1181 (1972), *cert. denied*, 411 U.S. 983, 36 L. Ed. 2d 959, 93 S. Ct. 2275 (1973); *State v. Matuszewski*, 30 Wn. App. 714, 637 P.2d 994 (1981). In addition, RAP 12.1(b) authorizes the court to ask the parties to present additional written argument if it concludes an issue not addressed in the briefs "should be considered to properly decide a case . . ." That is the procedure we followed in this case. Were we to ignore this issue and decide this appeal only on the issues presented by the parties, by inference we would be expanding the doctrine of informed consent to nonpatient third parties.

Here, the Crawfords have failed to establish facts that support an informed consent cause of action, and consideration of the issue is necessary to properly decide the case. As the Supreme Court observed in *Maynard Inv. Co. v. McCann*, 77 Wn.2d 616, 623, 465 P.2d 657 (1970):

> Courts should not be confined by the issues framed or theories advanced by the parties if the parties ignore the mandate of a statute or an established precedent. A case brought before this court should be governed by the

applicable law even though the attorneys representing the parties are unable or unwilling to argue it.

The court has the authority to consider this issue and to decide the case on that basis. The Crawfords ask the court to allow them to revive their negligence and battery causes of action. They have provided no authority or basis under which we could do so. We are constrained to dismiss this case with prejudice.

GREEN and MUNSON, JJ., concur.

Reconsideration denied August 8, 1988.

Review denied by Supreme Court November 29, 1988.