[No. 54694–1.   En Banc.   September 29, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. WAYNE
NORMAN ADAMSKI, *Petitioner.*

*Neil M. Fox* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *James W. Leslie, Deputy,* for respondent.

UTTER, J.—A juvenile defendant seeks reversal of convictions for first and second degree vehicle prowl on the basis that the trial court abused its discretion in granting a continuance which delayed his trial beyond the speedy trial expiration date mandated by JuCR 7.8. Finding that the State's failure to properly serve a subpoena on its key witness fell below the "due diligence" necessary to justify a continuance, we reverse.

Wayne Adamski was charged by information filed July 18, 1984, with third degree theft. Arraignment was scheduled for August 1. The State filed an amended information on July 31 charging Adamski with third degree theft (count 1), second degree vehicle prowl (count 2), and first degree vehicle prowl (count 3). An agreed order waiving arraignment was entered on August 1. Both parties acknowledge that the speedy trial expiration date under JuCR 7.8 would

be September 30, 60 days from August 1. The court entered an order setting the case for trial on September 25.

On September 19, the prosecution moved for a continuance of the trial date to October 9 because a police officer failed to honor a subpoena and was vacationing in Hawaii. Adamski objected to the motion since it would place the trial beyond the 60-day trial period. Finding that the absence of the police officer was not due to any fault by the prosecution and that a continuance would not prejudice the defendant, the court granted the motion. Although Adamski objected to this continuance at trial, it is not challenged before this court.

On October 9, the court granted the State's motion to dismiss count 1. The State also moved for a second continuance on the ground that an essential witness, Jim Byman, was not present. Byman resided in the Kiwanis Vocational Home in Centralia. In accordance with the Home's procedures, the prosecutor mailed a subpoena to Byman at the Home's address so that it could be recorded in a logbook. However, when Byman failed to appear that day at the hearing, the prosecutor called the Home and discovered that Byman never received a subpoena. Indeed, officials at the Home had no record of receiving the subpoena. Nonetheless, the court found that the State had exercised due diligence in mailing the subpoena to the Home and granted the continuance. Defendant objected to this continuance on the ground that it violated his right to a speedy trial.

The case came to trial on October 22, 82 days after arraignment was waived. Adamski's motion to dismiss the charges due to the violation of JuCR 7.8 was denied. After a brief trial, Adamski was found guilty as charged. Adamski was given two consecutive sentences of 30 days in detention.[1]

Adamski appealed the convictions to the Court of Appeals. That court rejected his argument that the second

---

[1] Adamski's motion to stay the sentence pending appeal was denied by the court at sentencing; accordingly, he has already served the entire 60-day sentence.

continuance was improper. Since the prosecutor followed the Home's procedures for serving subpoenas to its residents, the court concluded that the State exercised due diligence despite failing to comply with the requirements of CR 45(c). *State v. Adamski*, 49 Wn. App. 371, 742 P.2d 1252 (1987). We granted defendant's petition for review which challenges only the second continuance.

## I

JuCR 7.8(b) provides that an adjudicatory hearing on a juvenile offense shall begin within 60 days following the juvenile's arraignment. If the adjudicatory hearing is not held within the time limits of the rule, the information must be dismissed with prejudice. JuCR 7.8(g). However, continuances or other delays may be granted on motion from the prosecuting attorney if

> (ii) the State's evidence is presently unavailable, the prosecution has exercised due diligence, and there are reasonable grounds to believe that it will be available within a reasonable time; or
> (iii) required in the due administration of justice and the alleged juvenile offender will not be substantially prejudiced in the presentation of his or her defense.

JuCR 7.8(e)(2)(ii), (iii).[2]

The issue before the court is whether the prosecutor exercised "due diligence" in sending a subpoena to an essential witness in a manner that failed to comply with CR 45(c) and that caused the witness to be absent on the trial date. Adamski contends that a subpoena which does not comply with CR 45 is a "nullity" and its issuance therefore cannot constitute "due diligence." We agree.

The granting or denial of a continuance rests within the sound discretion of the trial court and is reviewable on appeal only for manifest abuse of discretion. *State v. Eller*, 84 Wn.2d 90, 524 P.2d 242 (1974). In this case, the attempted service of a subpoena to Jim Byman did not

---

[2]At the time of trial, this rule was codified as JuCR 7.8(d)(2). It now appears at JuCR 7.8(e) with wording unchanged.

constitute due diligence and the trial court's decision to grant a continuance was an abuse of discretion.

The issuance and service of subpoenas in juvenile cases is governed by CR 45(c). *See* JuCR 1.4(a), (b) (civil and criminal rules apply in juvenile cases to the extent not inconsistent); CrR 4.8 (subpoenas shall issue in same manner as in civil cases). CR 45(c) states:

A subpoena may be served by any suitable person over 18 years of age, by exhibiting and reading it to the witness, or by giving him a copy thereof, or by leaving such copy at the place of his abode. . . .

The prosecution did not comply with these requirements in serving the subpoena on Jim Byman. The subpoena was not read to Byman. It was not given to Byman in person. And it was not left by the server at Byman's abode. Instead, it was mailed to a post office box in care of the Kiwanis Vocational Home. As the prosecutor admitted, there is no indication in the Home's logbook that a subpoena to Byman was even received.

Given that CR 45(c) was not followed, we conclude that the failure to properly subpoena an essential witness falls below the standards of due diligence. The failure to serve a subpoena in conformity with the rules "renders such service a nullity." *Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968). A subpoena that is not served is of no legal significance; if service requirements have not been met, the subpoena cannot be said to have been issued.

This court has long held the position that due diligence requires the proper issuance of subpoenas to essential witnesses. In *State v. Smith*, 56 Wn.2d 368, 370, 353 P.2d 155 (1960), this court expressly declared that

[t]he failure to cause a subpoena to issue clearly constitutes such a lack of diligence as to justify the denial of a motion for a continuance.

Although the procedural facts in *Smith* differ from this one in that the court was asked to reverse the trial court's *denial* of a continuance, whereas in this case the court is

being asked to reverse the trial court's *granting* a continuance, the requirements of due diligence are the same. *See State v. Leroy,* 61 Wash. 405, 410, 112 P. 635 (1911); *State v. Smythe,* 148 Wash. 65, 67, 268 P. 133 (1928); *State v. Gowens,* 27 Wn. App. 921, 621 P.2d 198 (1980); *State v. Toliver,* 6 Wn. App. 531, 494 P.2d 514 (1972). As the Court of Appeals stated in *Toliver,* at 533, a party's failure to make "timely use of the legal mechanisms available to compel the witness' presence in court" precluded granting a continuance for the purpose of securing the witness' presence at a subsequent date.

■ Although it concedes that CR 45(c) was not followed in this case, the State argued, and the Court of Appeals agreed, that it nonetheless acted with "due diligence" because the subpoena was mailed to the Home in accordance with the Home's internal procedures for handling subpoenas to its residents. We reject the proposition that such private arrangements can substitute for the official rules of the court.

The trial court and Court of Appeals determined that the second continuance would not prejudice Adamski. However, this determination was inappropriate. A violation of a defendant's right to a speedy trial caused by the State's failure to exercise due diligence cannot be excused simply because the defendant cannot show prejudice.

## II

This court would be remiss to affirm the trial court on the alternative theory of "due administration of justice" suggested by the dissenting opinion of Durham, J. The reasons are numerous.

First, 75 years of Washington case law have held that a continuance is improper when the moving party has failed to exercise due diligence in issuing subpoenas for necessary witnesses. These cases are cited above. The court is *unanimous* in concluding that the State failed to exercise due diligence in this case, and all of our prior rulings on this

subject compel us to reverse the granting of the continuance.

■ The dissent declines to follow these cases and instead favors a rule which suggests that it does not matter whether the moving party has exercised due diligence in procuring its witnesses. The dissent contends that the State's failure to exercise due diligence under JuCR 7.8(e)(2)(ii) can be ameliorated by a simple determination that a continuance is necessary in the "due administration of justice" under subsection (iii). This interpretation would thoroughly emasculate the speedy trial rule and the protection it provides to juvenile defendants. If "due administration of justice" can be invoked at any time to grant a continuance, even when the prosecution fails to exercise due diligence in procuring its witnesses, there is little point in having the speedy trial rule at all.

■ Second, there are obvious due process problems in affirming a trial court ruling in a criminal proceeding on an alternative theory against which the defendant has had no opportunity to present an argument. Neither the trial court nor the Court of Appeals addressed the question of whether the continuance was necessary for the "due administration of justice", nor has the issue been raised at any time by either party.

Third, even assuming that a trial court ruling in a criminal case can be affirmed on an alternative theory without violating basic due process rights of the accused, fundamental fairness suggests that it ought not be done unless there can be no dispute on the alternative theory. *See State v. Halsen,* 111 Wn.2d 121, 757 P.2d 531 (1988) (in which both parties conceded on appeal that a different statute than the one applied by the trial court governed the case).

The cases cited by the dissent suggest as much. In *Sprague v. Sumitomo Forestry Co.,* 104 Wn.2d 751, 709 P.2d 1200 (1985), a civil case, this court chose an alternative method of calculating damages for breach of contract. There was no dispute regarding the alternative method since it was based upon unequivocal language in a statute.

Likewise in *State v. Armstead,* 40 Wn. App. 448, 698 P.2d 1102 (1985), a trial court decision to grant a 5–day continuance was sustained on the alternative theory that a 30–day continuance was allowed by a specific rule, which provided for continuances whenever the judge becomes disqualified; again, there was no dispute regarding the applicability of the rule.

The dissent's argument in this case is in stark contrast to this traditional approach. Far from recommending an alternative theory in which there is no dispute, the dissent cannot provide a single authority for its interpretation of subsection (iii). It is one thing to affirm a lower court decision on an alternative theory in which there is no dispute; it is quite another to use an alternative theory for which there is no authority.

█ Furthermore, a continuance granted beyond the speedy trial period must be supported by findings in the record showing the need for a continuance in the "due administration of justice." *State v. Tidwell,* 32 Wn. App. 971, 979, 651 P.2d 228 (1982). There have been no such findings by either court in this case. Granting a continuance because of the "due administration of justice" is a discretionary matter for the trial court. The trial court in this instance has exercised its discretion in declining to base its ruling on "due administration of justice" grounds; the dissent provides no authority for its argument that the courts below should have made a decision different than the one they made.

█ The dissent attempts to excuse the State's failure to exercise due diligence with the argument that the State nonetheless acted in good faith. The dissent provides no authority for a "good faith" exception to the due diligence requirement. Nor does the record support a finding of good faith in this case. Indeed, the inference from the record is that no subpoena was sent to the vocational home where the witness was living since the home had no record of a subpoena in its logbook. Had the State followed established court procedures in issuing a subpoena, at least the witness

would have known that he was expected to appear at the trial and testify.

Given the overwhelming and conclusive case law on this subject, which the dissent does not distinguish, we cannot accept the dissent's suggestion to affirm the trial court's decision to grant a continuance on an alternative theory. The State's failure to exercise due diligence rendered the trial court's action an abuse of discretion which this court is compelled to reverse.

## III

To fulfill the purposes of the juvenile speedy trial rule, its provisions should be honored. Like CrR 3.3, which contains identical language, JuCR 7.8 serves the purpose of ensuring speedy justice to the extent reasonably possible. *State v. Williams,* 85 Wn.2d 29, 31, 530 P.2d 225 (1975); *State v. Parris,* 30 Wn. App. 268, 633 P.2d 914 (1981). While the specific rights conferred by the rule are not of constitutional magnitude, *see State v. Mack,* 89 Wn.2d 788, 576 P.2d 44 (1978); *State v. Campbell,* 103 Wn.2d 1, 691 P.2d 929 (1984), *cert. denied,* 471 U.S. 1094 (1985); *State v. Terrovona,* 105 Wn.2d 632, 716 P.2d 295 (1986), the rule emanates from state and federal constitutional guaranties.[3]

Great effort has been made to remove traps for the unwary from this rule. When its provisions are not followed, a sanction of dismissal is appropriate. *Williams,* at 32; *State ex rel. Nugent v. Lewis,* 93 Wn.2d 80, 605 P.2d 1265 (1980); *State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976); *State v. Peterson,* 90 Wn.2d 423, 585 P.2d 66 (1978); *State v. Alexus,* 91 Wn.2d 492, 588 P.2d 1171 (1979); *State v. McIntyre,* 92 Wn.2d 620, 600 P.2d 1009 (1979).

---

[3] *See* Const. art. 1, § 10 ("Justice in all cases shall be administered openly, and without unnecessary delay"); Const. art. 1, § 22 ("In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury"); U.S. Const. amend. 6 ("the accused shall enjoy the right to a speedy and public trial").

The State did not exercise due diligence when it attempted to subpoena an essential witness who was absent when the trial was to have begun. Thus, under JuCR 7.8, the trial court abused its discretion in granting a continuance. The conviction is reversed and the information is dismissed with prejudice as mandated by JuCR 7.8(g).

PEARSON, C.J., and DOLLIVER, DORE, and CALLOW, JJ., concur.

DURHAM, J. (dissenting)—The majority chooses to dismiss criminal charges against the defendant rather than fully address the applicability of a court rule. Not only does this holding subvert justice, it sends an ominous signal to the community.

Under JuCR 7.8(e)(2), a continuance in juvenile court may be granted under any one of the following circumstances:

> (i) the alleged juvenile offender consents to a continuance or delay and good cause is shown; or
> (ii) the State's evidence is presently unavailable, the prosecution has exercised due diligence, and there are reasonable grounds to believe that it will be available within a reasonable time; or
> (iii) required in the due administration of justice and the alleged juvenile offender will not be substantially prejudiced in the presentation of his or her defense.

In this case, the juvenile court relied on subsection (ii) in granting the State's motion for a continuance. Finding that the State did not exercise due diligence within the meaning of this subsection, the majority reverses the juvenile court's ruling and dismisses the charges against the defendant. While I agree with the majority that due diligence, as defined by our cases, was not practiced here, there is another avenue to be explored.

JuCR 7.8(e)(2)(iii) allows for a continuance when it is required in the due administration of justice and when the juvenile offender is not substantially prejudiced thereby. This subsection clearly applies to the facts before us.

Regarding the first part of this standard, justice would surely have been frustrated in this case had the continuance not been granted because of the absence of the prosecution's chief witness. As the prosecutor informed the court, the absence of this witness would have greatly weakened, if not destroyed, the State's chances of obtaining a conviction.

Although the State failed to follow the statutory requirements for service of the subpoena, it nonetheless demonstrated a good faith attempt to secure the witness. It is uncontroverted that the prosecutor telephoned the vocational home where the witness was living and learned the home's procedures for processing subpoenas. Those procedures involve mailing a subpoena to the home, where a logbook entry is made and the subpoena is delivered to the child. The majority's statement that "the inference from the record is that no subpoena was sent to the vocational home where the witness was living since the home had no record of a subpoena in its logbook" is simply wrong. Majority, at 581. The court file contains a notation which clearly states that the subpoena was mailed to the home in accordance with its procedures. We should not hold the prosecutor, and ultimately society, responsible for items lost in the mail.

The second requirement of subsection (iii), that the defendant not be substantially prejudiced in presenting his case, is also met here. The juvenile court specifically found that the continuance could not prejudice Adamski because he was being held in detention on another matter. Adamski has not assigned error to this finding and it becomes a verity on appeal. *State v. Harris,* 106 Wn.2d 784, 790, 725 P.2d 975 (1986), *cert. denied,* ___ U.S. ___, 94 L. Ed. 2d 781, 107 S. Ct. 1592 (1987).

Accordingly, there is good reason to affirm the trial court on the basis of JuCR 7.8(e)(2)(iii).[4] I now turn to the majority's criticisms of this analysis.

The majority states that my position is without authority and is inconsistent with the cases it cites as representative of 75 years of Washington case law. Majority, at 579–81. However, the rule itself supplies the necessary authority for my position. JuCR 7.8(e)(2) allows for a continuance under the "due administration of justice" subsection even if the requirements of the other subsections are not met. The rule could not be clearer in this regard. Moreover, the cases cited by the majority discuss only what constitutes due diligence. Therefore, although these cases are relevant to analysis of subsection (ii), they in no way preclude analyzing a continuance's propriety under a separate authority.

Additionally, the majority argues that fundamental fairness would be violated if the trial court were to be affirmed on the basis of subsection (iii), that issue not having been argued below. This argument completely overlooks the power of this court to seek additional briefing on an issue not raised by the parties. RAP 12.1(b); *Crawford v. Wojnas,* 51 Wn. App. 781, 786, 754 P.2d 1302 (1988). If it becomes clear that the parties need to develop additional facts relevant to the new theory, we can remand the case to the trial court for more fact–finding. *See Bernal v. American Honda Motor Co.,* 87 Wn.2d 406, 414, 553 P.2d 107 (1976); *In re Cross,* 99 Wn.2d 373, 378 n.3, 662 P.2d 828 (1983). This court should call for additional briefing on this

---

[4]Ironically, my dissent would be unnecessary if the majority paid closer heed to its own pronouncement that "[t]o fulfill the purposes of the juvenile speedy trial rule, its provisions should be honored." Majority, at 582. The rule is not honored when the majority fails to acknowledge the applicability of one of its provisions.

important issue rather than summarily dismiss criminal charges against the defendant.

BRACHTENBACH and ANDERSEN, JJ., concur with DURHAM, J.